SMITHKLINE BEECHAM CORPORATION and Beecham Group, P.L.C.

v.

GENEVA PHARMACEUTICALS, INC. and Sumika Fine Chemicals Co., Ltd.

SmithKline Beecham Corporation

v.

Apotex Corporation, Apotex, Inc. and Torpharm, Inc.

SmithKline Beecham Corporation and Beecham Group, P.L.C.

v.

Zenith Goldline Pharmaceuticals, Inc. and Sumika Fine Chemicals Co., Ltd.

SmithKline Beecham Corporation and SmithKline Beecham, P.L.C.

v.

Geneva Pharmaceuticals, Inc. and Sumika Fine Chemicals Co., Ltd.

SmithKline Beecham Corporation and SmithKline Beecham, P.L.C.

v.

Zenith Goldline Pharmaceuticals, Inc. and Sumika Fine Chemicals Co., Ltd.

SmithKline Beecham Corporation and SmithKline Beecham, P.L.C.

v.

Apotex Corporation, Apotex, Inc. and Torpharm, Inc.

SmithKline Beecham Corporation and Beecham Group, P.L.C.

v.

Alphapharm Pty, Ltd.

SmithKline Beecham. P.L.C.

548

v.

Apotex Corporation, Apotex,
Inc. and Torpharm, Inc.

SmithKline Beecham. P.L.C.

v.

Zenith Goldline Pharmaceuticals, and
Sumika Fine Chemicals Co., Ltd.

SmithKline Beecham Corporation
and Beecham Group, P.L.C.

v.

Andrx Pharmaceuticals, Inc., Andrx
Pharmaceuticals, L.L.C. and
BASF Corporation

SmithKline Beecham Corporation and
SmithKline Beecham, P.L.C.

v.

Alphapharm Pty, Ltd.

SmithKline Beecham, P.L.C.

v.

Geneva Pharmaceuticals, Inc. and
Sumika Fine Chemicals Co.,
Ltd.

Nos. CIV.A.99–CV–2926, CIV.A.99–CV–
4304, CIV.A.00–CV–1393, CIV.A.00–CV–
4888, CIV.A.00–CV–5953, CIV.A.00–CV–
6464, CIV.A.01–CV–159, CIV.A.01–CV–
1027, CIV.A.01–CV–2169, CIV.A.01–CV–
2602, CIV.A.01–CV–2981, CIV.A.01–CV–
3364, CIV.A.02–CV–1484.

United States District Court,
E.D. Pennsylvania.

Oct. 31, 2002.

ROBERT

Robert D. Bajefsky, Richard B. Racine, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, Arthur Makadon, Ballard, Spahr, Andrews & Ingersoll, LLP, Philadelphia, PA, for plaintiffs.

William L. Mentlik, Roy H. Wepner, Lerner, David, Littenberg, Krumholz & Mentlik, LLP, Westfield, NJ, Arlene Fickler, Hoyle, Morris & Kerr, LLP, Philadelphia, PA, for defendant.

Hugh L. Moore, William Rakoczy, Lord, Bissell & Brook, Chicago, IL, Alan Bernstein, Robert Silver, Caesar, Rivise, Bernstein, Cohen & Pokotilow, Ltd., Philadelphia, PA, for Apotex Corp. and Torpharm, Inc.

## MEMORANDUM AND ORDER

SURRICK, District Judge.

Presently before the Court are the Motions of Defendants Apotex Corp., Apotex, Inc. and Torpharm, Inc. (collectively, "Apotex/Torpharm") to Intervene in Civil Action Nos. 00–CV–1393 (Doc. No. 26), 00–CV–6464 (Doc. No. 7) and 01–CV–2602 (Doc. No. 19). For the reasons that follow, Defendants' Motions will be denied.

## I. BACKGROUND [1]

Movants Apotex/Torpharm are Defendants in four of the above-captioned patent infringement actions brought by SmithKline Beecham Corp., Beecham Group, P.L.C. and SmithKline Beecham, P.L.C. (collectively, "SmithKline") against several companies seeking FDA approval to market generic forms of the drug Paxil®.[2] In each of the above-captioned cases, the Defendant generic drug company involved has submitted to the FDA an Abbreviated New Drug Application ("ANDA") and Paragraph IV certifications stating that SmithKline's patents related to paroxetine hydrochloride, the active ingredient in Paxil®, are invalid or will not be

1. Additional background regarding these cases and the applicable statutory framework is set forth in the Court's Memoranda and Orders dated September 29, 2001 and September 30, 2002.

2. In addition to the four lawsuits pending in this District, SmithKline is also pursuing an infringement action against Apotex/Torpharm in the U.S. District Court for the Northern District of Illinois (No. 98–CV–3952).

infringed by the manufacture, use or sale of the proposed generic product.[3]

Apotex/Torpharm was the first generic drug maker to submit an ANDA for a generic form of Paxil®. As the first company to submit an ANDA, Apotex/Torpharm is eligible to receive a 180–day period of exclusivity during which it would be the only company permitted to market a generic form of Paxil®. *See* 35 U.S.C. § 355(j)(5)(B)(iv). This exclusivity period will begin to run from the earlier of (1) the date of Apotex/Torpharm's first commercial marketing of its drug or (2) the date of a court decision holding a patent that is the subject of the Paragraph IV certification to be invalid or not infringed. 21 U.S.C. § 355(j)(5)(B)(iv)(I) and (II).

Among the companies to submit a subsequent ANDA is Zenith Goldline Pharmaceuticals, Inc. ("Zenith"). As required under the Hatch–Waxman Act, Zenith submitted Paragraph IV certifications stating that Smith-Kline's patents listed with respect to Paxil®

are invalid or will not be infringed by Zenith's proposed generic product.[4] *See* 21 U.S.C. § 355(j)(2)(A)(vii). In conjunction with its ANDA, Zenith submitted Paragraph IV certifications with respect to U.S. Patent Nos. 4,721,723 (the " '723 Patent"), 5,900,423 (the " '423 Patent"), 5,872,132 (the " '132 Patent"), 6,080,759 (the " '759 Patent"), 6,113,944 (the " '944 Patent"), 6,172,233 (the " '233 Patent"), 5,789,449 (the " '449 Patent"), 6,063,927 (the " '927 Patent"), 6,133,289 (the " '289 Patent") and 6,121,291 (the " '291 Patent"). After receiving notice of Zenith's Paragraph IV certifications, SmithKline filed Civil Action No. 00–CV–1393, alleging that the submission of Zenith's ANDA constitutes infringement of the '723, '423 and '132 Patents. Subsequently, SmithKline filed Civil Action No. 00–CV–6464, alleging infringement of the '759 and '944 Patents, and Civil Action No. 01–CV–2602, alleging infringement of the '233 Patent. SmithKline's Complaints

**3.** Pursuant to the 1984 Drug Price Competition and Patent Term Restoration Act (the "Hatch–Waxman Act" or the "Act"), it is an act of patent infringement to submit an ANDA containing a Paragraph IV certification. *See* 35 U.S.C. § 271(e)(2)(A).

**4.** As the maker of the "pioneer drug," Smith-Kline was required to file a new drug application along with the patent number and expiration date of any patent which claims the pioneer drug or a method of using the drug with respect to which a claim for patent infringement could reasonably be asserted by the patent owner. *See* 21 U.S.C. § 355(b)(1). Where additional patents claiming the pioneer drug or a method of using the drug are issued after the drug is approved, the pioneer drug maker must file the patent information with the FDA not later than 30 days after the patent is issued. *See* 21 U.S.C. § 355(c)(2). The FDA publishes a list of pioneer drugs (also referred to as "listed drugs") along with the foregoing patent information in the *Approved Drug Products With Therapeutic Equivalence Evaluations,* commonly referred to as the "Orange Book," which is updated monthly. *See* 21 U.S.C. § 355(j)(7)(A).

When submitting an ANDA, a company seeking approval for a generic drug must make one of the following certifications with respect to each patent that claims the listed drug or a method of use for the drug for which the ANDA applicant is seeking approval:

(I) that such patent information has not been filed [a "Paragraph I" certification],

(II) that such patent has expired [a "Paragraph II" certification],

(III) of the date on which such patent will expire [a "Paragraph III" certification], or

(IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted [a "Paragraph IV" certification]; ...

35 U.S.C. § 355(j)(2)(A)(vii). An ANDA applicant submitting a Paragraph IV certification must give detailed notice to the patent owner and to the holder of the approved new drug application, who may then file an infringement action against the ANDA applicant within 45 days of receipt of the notice. The Act also prohibits an ANDA applicant from filing a declaratory judgment action with respect to the patent before the expiration of the 45–day period. 35 U.S.C. § 355(j)(5)(B)(iii). If the patent owner or new drug applicant do not file an infringement suit within 45 days, approval of the ANDA is effective immediately. 35 U.S.C. § 355(j)(5)(B)(iii). However, if an infringement suit is filed, approval of the ANDA may not be made effective until the earlier of 30 months from receipt of the notice or the date of a court decision finding the patent invalid or not infringed.

In cases such as this one, where the pioneer drug maker lists additional patents claiming its drug after the drug is approved, an ANDA filer must amend its application to include the required certification with respect to the newly listed patent(s) and must give notice of any Paragraph IV certification. If infringement suits are filed with respect to the additional patent(s), the filing of each suit triggers a separate 30–month stay of FDA approval of the ANDA.

against Zenith do not allege infringement of the '449, '927, '289 and '291 Patents.

In response to SmithKline's Complaint in Civil Action No. 00–CV–1393, Zenith filed a counterclaim seeking a declaratory judgment that its proposed generic product will not infringe the '449 Patent. SmithKline moved to dismiss Zenith's counterclaim, stating that Zenith's proposed product would not infringe the '449 Patent and that, therefore, no justiciable case or controversy existed regarding infringement of the '449 Patent. Judge Kauffman denied SmithKline's motion to dismiss, finding that under the circumstances, Zenith had an objectively reasonable apprehension that it might face an infringement suit by SmithKline regarding the '449 Patent.[5] Following Judge Kauffman's ruling, SmithKline filed an amended Reply to the counterclaim in which it unconditionally represented that it would not sue Zenith for any infringement of any claim of the '449 Patent concerning Zenith's ANDA. In light of SmithKline's covenant not to sue, Zenith has requested that the Court enter an order dismissing the counterclaim in Civil Action No. 00–CV–1393 based on the lack of any justiciable case or controversy to support subject matter jurisdiction.

In a similar series of events, Zenith also filed counterclaims in Civil Action Nos. 00–CV–6464 and 01–CV–2602, requesting declaratory judgments of non-infringement with respect to the '927 Patent and the '289 and '291 Patents, respectively. In those cases, SmithKline did not move to dismiss the counterclaims but, rather, filed responses providing similar covenants not to sue Zenith

for infringement of those patents. Zenith thereafter submitted to the Court proposed orders for dismissal of its counterclaims in Civil Action Nos. 00–CV–6464 and 01–CV–2602 based on the lack of any justiciable case or controversy.

Concerned that the orders of dismissal proposed by Zenith may constitute "court decisions" that could jeopardize their 180–day exclusivity period, Apotex/Torpharm filed the instant motions seeking to intervene in Civil Action Nos. 00–CV–1393, 00–CV–6464 and 01–CV–2602. Apotex/Torpharm contend that Zenith lacked any meritorious basis to file its declaratory judgment counterclaims because it never had a reasonable apprehension of ever being sued by Smith-Kline for infringement of the '449, '927, '289 or '291 Patents. As such, Apotex/Torpharm argue, there was never a case or controversy, and subject matter jurisdiction over Zenith's counterclaims was lacking at the moment they were filed. Apotex/Torpharm allege that Zenith nonetheless filed its counterclaims in order to engineer a "court decision" that could trigger Apotex/Torpharm's exclusivity period and cause it to run out before Apotex/Torpharm are in a position to market their generic product.[6]

Apotex/Torpharm object to the entry of Zenith's proposed orders of dismissal and have submitted proposed Complaints in Intervention seeking declaratory judgment that Zenith lacked a meritorious basis to file its counterclaims relating to the '449, '927, '289 or '291 Patents; that Zenith never had a reasonable apprehension of being sued for infringement of those patents; and that Ze-

---

5. Civil Action No. 00–CV–1393 was subsequently reassigned to the calendar of this Court.

6. Apotex/Torpharm advise that on May 24, 2001, the FDA tentatively approved their proposed generic product. They have not, however, received final approval to market the product, and they note that one barrier to such approval is the patent litigation filed by SmithKline against Apotex/Torpharm. As set forth in note 4, *supra*, approval of Apotex/Torpharm's ANDA may not be made effective until each of the patents involved is found to be invalid or not infringed, or until the 30–month stay has expired in each of the infringement actions filed by SmithKline against Apotex/Torpharm. Moreover, even if the 30–month stays expire before the infringement

lawsuits are resolved, and Apotex/Torpharm receive final FDA approval to market their product, they may elect to postpone commercial marketing in order to avoid liability for damages should SmithKline prevail on its infringement claims. *See, e.g., In re Tamoxifen Citrate Antitrust Litig.,* 222 F.Supp.2d 326, 331–32 n. 4 (E.D.N.Y.2002) (noting that generic drug maker faces risk of heavy penalties if it markets its approved product before resolution of infringement claim); *In the Matter of Schering–Plough Corp.,* No. 9297, 2002 WL 1488085, ¶¶ 390–92 (FTC June 27, 2002) (experts testified that based on the potential for "very, very severe penalties," generic companies were unlikely to market product while patent litigation was pending).

nith filed its counterclaims solely for the purpose of obtaining a "court decision" that would trigger Apotex/Torpharm's exclusivity period. Apotex/Torpharm request that the court deny entry of Zenith's proposed orders and permit Apotex/Torpharm to take discovery to prove the foregoing assertions. Alternatively, Apotex/Torpharm request that any order of dismissal entered be without prejudice and include language precluding Zenith or others from asserting that the dismissal is a "court decision" for purposes of Apotex/Torpharm's exclusivity period.

## II. LEGAL STANDARD

Apotex/Torpharm seeks intervention as of right pursuant to Fed.R.Civ.P. 24(a),[7] which provides, in pertinent part,

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.

Fed.R.Civ.P. 24(a). The procedure for intervention prescribed by Fed.R.Civ.P. 24(c) requires that the party seeking intervention file a motion setting forth the grounds therefor, accompanied by a pleading setting forth the claim or defense for which intervention is sought. See also 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1914, at 416–17 (1986).

■ A party seeking to intervene as of right under Fed.R.Civ.P. 24(a) must establish the following elements: (1) a sufficient interest in the litigation; (2) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; (3) inadequate representation of the proposed intervenor's interest by the existing parties to the litigation; and (4) a timely application. See *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *Kleissler v. United States Forest Svc.,* 157 F.3d 964, 969 (3d Cir.1998). The application of these factors is elastic and turns of the facts of a particular case. As the Third Circuit explained in *Kleissler,*

Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise. Nonetheless, the polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.

*Kleissler,* 157 F.3d at 972.

## III. ANALYSIS

■ As the first ANDA applicant, Apotex/Torpharm is entitled to the 180–day exclusivity period provided under the Hatch–Waxman Act as a reward to the first generic drug company to challenge a pioneer drug company's patents. See 21 U.S.C. § 355(j)(5)(B)(iv); *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1075 (D.C.Cir.1998). In their Motions to Intervene Apotex/Torpharm contend that they have a direct interest in the exclusivity period, which is threatened by the possibility that the dismissal of Zenith's counterclaims may constitute a "court decision" that could trigger and exhaust that period before Apotex/Torpharm are in a position to market their generic product. Faced with this possibility, Apotex/Torpharm seek to block entry of Zenith's proposed dismissal orders or, alternatively, to secure a pre-emp-

7. Alternatively, Apotex/Torpharm request permissive intervention under Fed.R.Civ.P. 24(b). Rule 24(b) provides, in pertinent part:
   (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim

or defense and the main action have a question of law or fact in common... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

tive determination from this Court that the dismissals are not "court decisions" within the meaning of 21 U.S.C. § 355(j)(5)(B)(iv).

In our view, Apotex/Torpharm's approach is problematic in more that one respect. Clearly, Apotex/Torpharm have an interest in the litigation between Zenith, a subsequent ANDA applicant, and SmithKline. However, applying the legal standard discussed above, the threat to that interest is too remote and attenuated to justify intervention.[8]

In support of their Motions, Apotex/Torpharm point to the case of *Teva Pharms. v. United States Food and Drug Admin.* (*Teva I*), 182 F.3d 1003 (D.C.Cir.1999). In that case, a generic drug maker, Teva, submitted an ANDA for a generic form of the drug "Ticlid." Teva subsequently filed an action against the patent holder seeking a declaratory judgment of non-infringement.[9] *Teva I*, 182 F.3d at 1006. The same day that Teva filed suit, the patent holder represented that it would not sue Teva for infringement of the patent at issue. *Id.* The patent holder then moved to dismiss Teva's complaint for lack of subject matter jurisdiction based on the lack of any case or controversy with regard to infringement of the patent. The district court granted the motion and dismissed Teva's complaint.[10] The FDA subsequently approved Teva's ANDA, but refused to rec-

ognize the dismissal of the Teva's declaratory judgment action as a "court decision" that would trigger the first applicant's exclusivity.[11] *Id.* at 1006. Because no court decision had occurred and the first applicant, Torpharm, had not begun commercial marketing, Teva's ANDA was ineligible for final approval. *Id.*

Teva then filed suit against the FDA seeking declaratory and injunctive relief requiring the FDA to treat the dismissal as a court decision and limit the first applicant's exclusivity period to 180 days from the date of that decision. *Id.* at 1007. On review of the district court's refusal to grant Teva's requested relief, the District of Columbia Circuit Court of Appeals reversed, holding that the dismissal of the declaratory judgment claim could constitute a "court decision." *Id.* at 1009–10. The court reasoned that the dismissal "appears to meet the requirements of a triggering 'court decision' because the court had to make predicate finding with respect to whether [the patent owner] would ever sue Teva for infringement in order to conclude that there was no case or controversy between the parties." *Id.* at 1009. The court concluded that the FDA acted arbitrarily and capriciously in refusing, without adequate explanation, to treat the dismissal order as a court decision finding the patent

---

8. Because Apotex/Torpharm cannot establish a sufficiently direct threat that their interest will be impaired or affected, as a practical matter, by the dismissal or Zenith's counterclaims, we need not address the remaining factors under Rule 24(a). However, we question the timeliness of Apotex/Torpharm's application. In Civil Action No. 00–CV–1393, Zenith submitted its proposed dismissal order on August 1, 2000. Counsel for Apotex/Torpharm was copied on that correspondence. Despite the fact that Torpharm was a party in a previous action involving similar exclusivity issues, *see Teva Pharms. v. United States Food and Drug Admin.* (*Teva I*), 182 F.3d 1003 (D.C.Cir.1999), Apotex/Torpharm did not raise any objection to Zenith's proposed dismissal for approximately eight months.

9. The first ANDA for Ticlid was filed by Torpharm. *Teva I*, 182 F.3d at 1004 n. 2.

10. In its order dismissing the complaint for lack of subject matter jurisdiction, the court found that there was "no justiciable case or controversy between the parties" and that Teva "lacks a

reasonable apprehension of suit" for patent infringement. *Teva I*, 182 F.3d at 1006.

11. The FDA's "Guidance for Industry" provides that "[u]ntil such time as the rulemaking process is complete, FDA will regulate directly from the statute, and will make decisions on 180–day exclusivity on a case-by-case basis." *See* Guidance for Industry: 180–Day Generic Drug Exclusivity Under the Hatch–Waxman Amendments to the Federal Food, Drug, and Cosmetic Act (June 1998), available at www.fda.gov/cder/guidance/index.htm. Under this case-by-case approach, the FDA determined in *Teva* that the dismissal order did not satisfy the "court decision" requirement of the Hatch–Waxman Act's exclusivity provision. *See Teva I*, 182 F.3d at 1005. In 1999, the FDA proposed new rules that would clarify and amend its regulations governing 180–day generic drug exclusivity, including the application of the "court decision" trigger. *See* 180–Day Generic Drug Exclusivity for Abbreviated New Drug Applications, 64 FR 42873 (1999). The FDA has not yet published a final rule.

at issue invalid, not infringed or unenforceable.[12]  *Id.* at 1012.

Based on *Teva I* and subsequent authority, it is clear that Apotex/Torpharm's exclusivity period can be triggered by the termination of an action commenced by a subsequent applicant.  *See Minnesota Mining and Mfg. Co. v. Barr Lab., Inc.,* 289 F.3d 775, 777 (Fed.Cir.2002), citing *Teva I,* 182 F.3d at 1010.  However, the decision in *Teva I* does not compel the conclusion that Zenith's proposed dismissal orders will constitute "court decisions" triggering Apotex/Torpharm's exclusivity.[13]  Significantly, the Federal Circuit recently expressly declined to decide whether a dismissal for lack of subject matter jurisdiction would trigger the first ANDA applicant's 180–day exclusivity period.  *Minnesota Mining,* 289 F.3d at 781 n. 2.  Moreover, notwithstanding the decision in *Teva,* the FDA appears reluctant to treat dismissal of a declaratory judgment action based on the lack of a case or controversy as a triggering court decision.  *See* 180–Day Generic Drug Exclusivity for Abbreviated New Drug Applications, 64 FR 42873 (1999) (noting that FDA has rejected interpretation that would place burden on agency to inquire into the facts underlying the dismissal).  Under these circumstances, the ultimate impact of the proposed dismissal orders on Apotex/Torpharm's exclusivity is too speculative and indirect to support intervention.[14]

Having reached this conclusion, we note that Apotex/Torpharm's Motions raise an additional dilemma.  Even assuming, *arguendo,* that the dismissal orders would constitute "court decisions," intervention would appear to be futile in this case.  As noted above, Apotex/Torpharm seek to block dismissal of Zenith's counterclaims, contending that they never presented a case or controversy, but were filed merely to engineer a triggering court decision.  In our view, Apotex/Torpharm's strategy here is foreclosed by recent precedent.  *See Teva I,* 182 F.3d at 1010 ("To start, or trigger, the period of market exclusivity by a 'court decision,' an ANDA applicant need only obtain a judgment that has the effect of rendering the patent invalid or not infringed with respect to itself.");  *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1073 (D.C.Cir.1998) (suggesting use of declaratory judgment action as means for subsequent ANDA applicant to trigger exclusivity period.).

Most recently, in *Minnesota Mining,* the Federal Circuit Court of Appeals recognized that a subsequent ANDA applicant has no obligation to avoid triggering litigation that will benefit it by starting a competitor's exclusivity period.  *Minnesota Mining,* 289 F.3d at 781.  In so holding, the court squarely rejected the suggestion that the district court originally lacked subject matter jurisdiction.[15]  *Id.* at 780.  The court stated,

---

**12.**  On remand, the FDA explained that it did not consider the order a court decision because the basis for the dismissal was not apparent on the face of the order.  *Teva Pharms. USA, Inc. v. United States Food & Drug Admin. (Teva II),* 1999 WL 1042743, *5 (D.D.C. Aug.19, 1999), *aff'd,* 2000 WL 1838303 (2000).  The FDA further responded that it does not inquire into the underlying record in part because its staff "lacks the expertise to make accurate determinations about the legal effect, such as estoppel, of representations relating to patents that are not embodied in a court decision."  *Id.* The court rejected this explanation, finding that the basis for the dismissal could be ascertained from a cursory review of the order and the patent holder's letter admitting non-infringement.  *Teva II* at *5.

**13.**  We recognize that there are differences between the dismissal order entered in *Teva* and the ones proposed by Zenith that could prove significant.  As noted, *supra,* the FDA asserted that the order in *Teva* did not reveal a finding

that the patent was not infringed or unenforceable.  In the instant cases, however, the proposed orders recite SmithKline's unconditional representation that it will not sue Zenith for any infringement of the '449, '927, '289 or '291 Patents.

**14.**  We are aware that in *Teva* and *Minnesota Mining,* the first generic ANDA applicants intervened in an effort to preserve their exclusivity.  *See Teva,* 182 F.3d at 1004, n. 2;  *Minnesota Mining,* 289 F.3d at 779.  *See also Minnesota Mining & Mfg.,* 139 F.Supp.2d 1109, 1114 (D.Minn.2001).  However, it does not appear that intervention was opposed in those cases.

**15.**  In a concurring opinion, Judge Gajarsa observed that the terms of the Hatch–Waxman Act provide the elements satisfying the case or controversy requirement.  *Minnesota Mining,* 289 F.3d at 791.  As Judge Gajarsa explained, "[t]he two acts of (1) a patentee listing a patent in the

*"Teva* ... supports the proposition that a subsequent ANDA filer can participate in litigation in order to trigger the exclusive marketing period granted to the first filer." *Id.* (quoting district court). A contrary conclusion, the court explained, would undermine the Hatch–Waxman Act's purpose of expediting the availability of generic drugs. *Id.* As the district court in *Minnesota Mining* reasoned:

> While the Act ... provides incentives to first ANDA filers by granting them an exclusive marketing period, it would be contrary to the very purpose of the Act to allow the first filer to block market entry of other generic manufacturers because the first filer is involved in protracted litigation.

*Minnesota Mining,* 139 F.Supp.2d 1109, 1115.

In the instant cases, the heart of Apotex/Torpharm's Motions is an attempt to accomplish the result that the Federal Circuit cautioned against in *Minnesota Mining.* By requesting denial of Zenith's dismissal orders or, in the alternative, the entry of orders precluding the triggering of the exclusivity period, Apotex/Torpharm seek to delay the market entry of Zenith and other subsequent applicants while Apotex/Torpharm remain unable to market their product. In our view, the foregoing authority precludes the relief that Apotex/Torpharm seek. Moreover, it would appear that this Court lacks the authority to grant the relief requested in Apotex/Torpharm's Complaints in Intervention. In *Minnesota Mining,* the Federal Circuit held that the district court did not err in

failing to order that a grant of summary judgment would not trigger the 180–day exclusivity period. *Minnesota Mining,* 289 F.3d at 783. Such an order, the court held, "would ... constitute improper judicial enforcement of the provisions of the Hatch–Waxman Amendments, outside of the context of an [Administrative Procedure Act] suit." *Id.*

Accordingly, we are satisfied that Apotex/Torpharm may not intervene as of right in the actions against Zenith. Further, for the same reasons, we conclude that allowing permissive intervention would be contrary to the purposes of the Hatch–Waxman Act and would unduly delay or prejudice the adjudication of the rights of the other parties to this litigation.

## IV. CONCLUSION

For the foregoing reasons, Apotex/Torpharm's Motions to Intervene will be denied.

An appropriate order follows.

### ORDER

AND NOW, this 31st day of October, 2002, upon consideration of the Motions of Defendants Apotex Corporation, Apotex, Inc. and Torpharm, Inc. to Intervene in Civil Action Nos. 00–CV–1393 (Doc. No. 26), 00–CV–6464 (Doc. No. 7) and 01–CV–2602 (Doc. No. 19), and all papers filed in support thereof or in opposition thereto, it is ORDERED that the above Motions are DENIED.

Orange Book through the filing of a NDA, and (2) a generic manufacturer filing an ANDA, together meet the case or controversy requirement so as to allow a declaratory judgment action of noninfringement." *Minnesota Mining,* 289 F.3d at 791. We agree. As discussed *supra,* the Act requires SmithKline, as the pioneer drug maker, to list all patents related to Paxil® as to which a claim for infringement could reasonably be asserted: *See* 21 U.S.C. § 355(b)(1). When submitting its ANDA application and Paragraph IV certifications, Zenith was required to give notice of its submission and faced the prospect of an infringement suit on any or all of the listed patents. Regardless of the ultimate merit of the potential infringement claims, we agree with Judge Kauffman's conclusion that "[b]ased on the vigor [SmithKline] has displayed with respect to pro-

tecting its paroxetine hydrochloride patents, it is not unforseeable that it would similarly choose to sue Zenith for infringement of the '449 Patent." *See* June 27, 2000 Order, Civil Action No. 00–CV–1393 (Doc. No. 14). *See also* Alfred B. Engelberg, *Special Patent Provisions for Pharmaceuticals: Have They Outlived Their Usefulness?,* 39 IDEA. J.L. & Tech. 389, 415 (1999) ("[T]he drafters of the [Hatch–Waxman] Act failed to recognize that the automatic thirty-month stay injunction inadvertently created a powerful incentive for the [pioneer drug maker] to list any and every patent related to a drug product irrespective of whether such patent was a significant barrier to legitimate competition. Thus [the Act] automatically enables a patent owner to prevent competition irrespective of the merits of the patent being asserted....").