ROGERS, Circuit Judge,
concurring in part and concurring in the judgment:
Although I concur in holding that plaintiffs fail to demonstrate entitlement to injunctive relief based on a likelihood of success on the merits of their disparate impact claim, I write separately to identify the narrow issue this court is required to decide in disposing of these appeals.
Plaintiffs’ theory of the case is straightforward: The formula used to determine grant awards of federal funds under Option 1 of the Road Home Program[1], which bases the award on the lesser of the prestorm value of an applicant’s home and the cost to rebuild, has a discriminatory impact on African-American grantees living in historically segregated communities because generally African-Americans own homes with pre-storm values that fall below the cost to rebuild, while whites living in predominantly white communities own comparable homes with pre-storm values that exceed the cost to rebuild. See Compl. ¶¶ 52-60. Robin Keegan, then-Executive Director of the Office of Community Development for the State of Louisiana, interposed three objections to plaintiffs’ claim of likelihood of success on the merits: (1) The Eleventh Amendment bars any relief; (2) The Fair Housing Act, 42 U.S.C. §§ 3601 et seq., does not afford a cognizable claim; and (3) Plaintiffs’ evidentiary proffer does not account for the total federal funds distributed and hence fails to show that the pre-storm value calculation under Option 1 of the Road Home Program had a disparate impact on the proposed class of African-American homeowners in Orleans Parish.[2]
*1090 1. The Eleventh Amendment argument is based on fundamental factual and legal misunderstandings, see Maj. Op. at 1083-84, and is effectively conceded by Keegan. Plaintiffs contend that because Keegan must use the remaining $148 million of federal funds to supplement the federal grants of existing Road Home recipients, see An Act Making appropriations for the Department of Defense for the fiscal year ending September 30, 2008, and for other purposes, Pub.L. No. 110-116, § 159, 121 Stat. 1295, 1343-44 (2007) (“2007 Act”), any relief would remedy an ongoing violation of federal law and have no impact on the state’s treasury or budget, thereby avoiding the Eleventh Amendment’s sovereign immunity bar. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In response Keegan claimed that the Ex parte Young exception to the bar interposed by the Eleventh Amendment was inapplicable because the state, not Keegan, is the real party in interest inasmuch as the state’s political or property rights and its public treasury would be adversely affected were plaintiffs to prevail. This argument is premised on Keegan’s position that the recalculation of Option 1 grants sought by plaintiffs would “amount to money damages to be paid from the State treasury,” Def.-Appellee Cross-Appellant Robin Keegan Br. at 15, and that “[t]he allocation of state funds by the State of Louisiana to compensate homeowners after Hurricanes Katrina and Rita is an important sovereign state interest,” id. at 25. Even after plaintiffs pointed to the federal source of the funds, Keegan repeated in reply that “the funds in question are state rather than federal funds.” Def.Appellee Cross-Appellant Robin Keegan Reply Br. at 23. This insistence continued during oral argument, where Keegan argued that “plaintiffs’ requested relief is a retrospective claim for damages to be paid from the state treasury.” Oral Arg. at 24:45-52.
Keegan has not identified any state funds that are disbursed under the Road Home Program, and Congress, in appropriating the disaster recovery Community Development Block Grant funds from which the $148 million would be drawn, mandated that “such funds serve only to supplement and not supplant any other State or Federal resources committed to the Road Home program.” 2007 Act § 159(b), 121 Stat. at 1343. As plaintiffs’ counsel confirmed to the district court and during oral argument, the $148 million remains in “the custody and control of the United States” and the funds “have never been disbursed to Louisiana; Louisiana has no right to use them at this point.” Oral Arg. at 34:46-35:14; Clarification of the [District] Court’s May 24, 2010 Order, No. l:08-cv-1938, at 6 (D.D.C. June 6, 2010).[3] Moreover, counsel for Keegan and for plaintiffs confirmed during oral argument that any unused Road Home Program funds would revert to the United States Treasury. See Oral Arg. at 7:45-9:00, 27:52-28:35.
As legal support for the Eleventh Amendment objection, Keegan relied on the dissenting opinion in Seminole Tribe of Florida v. Florida, 517 U.S. 44, 78, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Stevens, J., dissenting), and Idaho v. Coeur d’Alene Tribe of Idaho, 521 U.S. 261, 117 *1091 S.Ct. 2028, 138 L.Ed.2d 438 (1997). As the majority notes, Keegan “implausibly]” reads Coeur d’Alene to overturn Ex parte Young. Maj. Op. at 1084. Other than seeking an extension of the “special sovereign interest” exception addressed in Coeur d’Alene, Keegan cited no authority to support an Eleventh Amendment bar to plaintiffs’ claims where only federal funds are involved and plaintiffs’ proposed form of relief will not impose a monetary loss on the state treasury. Because the federal funds at issue remained in the United States Treasury, Keegan failed to explain how they could be considered state funds in any legal sense.[4] The Supreme Court’s decision in Edelman, 415 U.S. at 664-67 & n. 11, 94 S.Ct. 1347, and its progeny, see, e.g., Papasan v. Attain, 478 U.S. 265, 278-81, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), emphasize that the Eleventh Amendment prohibits retroactive relief that imposes a “monetary loss” on the state’s treasury. By failing to oppose plaintiffs’ argument regarding the non-effect on the state treasury, Keegan has effectively conceded the point because “[t]he party asserting Eleventh Amendment immunity bears the burden of proving its applicability.” Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir.2010) (citation and internal quotation marks omitted).
2. The objection that plaintiffs have no cognizable claim under the Fair Housing Act, because, according to Keegan, the Road Home Program is a compensation grant program rather than a housing program, was a passing assertion in Keegan’s brief without legal citation. A passing reference to an unsupported narrative is insufficient to present an argument to this court. Cfi, e.g., Bush v. District of Columbia, 595 F.3d 384, 388 (D.C.Cir.2010) (citing Fed. R. App. P. 28(a)(9)(A)). Even assuming for purposes of argument that Keegan incorporated authority by referencing her memorandum opposing plaintiffs’ motion for injunctive relief, the argument was confined to a footnote and a single citation involving a city’s failure to prevent dumping at a neighboring site. See Opp’n to Pis.’ Mot. for a TRO and Prelim. Inj., No. 1:08-cv-1938, Doc. No. 57, at 16 n. 5 (June 14, 2010) (citing Cox v. City of Dallas, 430 F.3d 734, 740 (5th Cir.2005), cert. denied, 547 U.S. 1130, 126 S.Ct. 2039, 164 L.Ed.2d 783 (2006)). This court ordinarily does not address an argument presented in a footnote. See, e.g., Am. Wildlands v. Kempthome, 530 F.3d 991, 1001 (D.C.Cir.2008). In any event, the cases cited by the Fifth Circuit in Cox are likewise not on point. See Cox, 430 F.3d at 740 (citing Southend Neighborhood Improvement Ass’n v. County of St. Clair, 743 F.2d 1207, 1210 (7th Cir.1984)). Plaintiffs’ contention is different, namely that if the remaining federal funds for the Road Home Program are not available to support the ultimate remedy in their action, then thousands of plaintiffs will forever lose the opportunity to obtain grants for home repairs on a nondiscriminatory basis.
3. The evidentiary objection is persuasive because a factual premise underlying plaintiffs’ request for injunctive relief has been overtaken by events. In the district court, Keegan twice declined to dispute plaintiffs’ evidentiary proffer with “data about the administration of the [Road Home] Program that would show what effect the Option 1 formula has had,” despite the district court’s finding of a prima facie case of disproportionate impact. See Greater New Orleans Fair Hous. Action *1092 Ctr. v. U.S. Dep’t of Hous. & Urban Dev., 723 F.Supp.2d, 1, 6 (D.D.C.2010). The district court noted, moreover, that Keegan has not “demonstrate[d] that plaintiffs’ statistics or logic is flawed.” Id. Nonetheless, in moving for a preliminary injunction plaintiffs have the burden to demonstrate the likelihood of success on the merits of their disparate impact claim. See Gordon v. Holder, 632 F.3d 722, 724 (D.C.Cir.2011) (citing Winter v. Natural Res. Def. Council, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)); Wash. Metro. Area Transit Comm’n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C.Cir.1977).
Keegan asserts on appeal that “the Road Home Program is a state-wide program” and thus “when [plaintiffs] do submit appropriate evidence, it will need to be on a state-wide level.” Def.-Appellee Cross-Appellant Robin Keegan Br. at 33. The majority credits this argument. Maj. Op. at 1085-86. Keegan made the argument only cursorily and without citation to authority, and hence it is not properly presented for this court to resolve. See, e.g., Bush, 595 F.3d at 388 (citing Fed. R. App. P. 28(a)(9)(A)).
Keegan does, however, present a persuasive argument with respect to the 2008 PolicyLink study[5] proffered by plaintiffs. As Keegan points out, the PolicyLink study does not consider the total current compensation package available to Option 1 applicants. Although the study notes the availability of Additional Compensation Grants (“ACGs”) to low-and moderate-income (“LMI”)[6] applicants, at the time of the study ACGs were subject to a $50,000 cap. See PolicyLink at 41. Once this limitation was removed, effective January 2010, LMI applicants could receive an ACG in an amount subject only to the existing $150,000 cap for total Road Home Program grants. Keegan asserts on brief that “[s]ince minority and disabled families are more likely to be in the LMI category, the ACG grants adjust for any alleged disparity caused by the [pre-storm value] formula.” Def.-Appellee Cross-Appellant Robin Keegan Br. at 34. In other words, with regard to LMI applicants, Keegan claims the removal of the ACG cap effectively eliminated the average resource gap of nearly $50,000 identified by the PolicyLink study for all grant recipients whose awards were based on pre-storm value, which was larger for African-American applicants than their white counterparts. See PolicyLink at 42-43; see also Maj. Op. at 1081-82.
During oral argument counsel for plaintiffs acknowledged that the removal of the $50,000 cap for ACGs resulted in LMI applicants “receiving] the full amount [of their cost to rebuild] up to $150,000” under the Option 1 grant formula, making them “[in]eligible for any additional financial relief under the order that [plaintiffs] seek.” Oral Arg. at 39:04-45. This leaves in plaintiffs’ proposed class only those African-American applicants or grantees who do not qualify for ACGs due to their income levels. See id. Plaintiffs claim there are 9,500 other homeowners in Orleans Parish who received initial grants based on pre-storm value but did not receive ACGs like LMI homeowners. See Pls.-Appellants’ Br. at 22. Keegan responds that only 19 applicants potentially fit into plaintiffs’ proposed class of non-LMI African-
*1093 American applicants in Orleans Parish whose grants were calculated using prestorm value. See Def.-Appellee Cross-Appellant Robin Keegan Reply Br. at 30; see also Maj. Op. at 1082. Regardless of which number is correct, neither the 2000 U.S. Census data proffered by plaintiffs, showing African-Americans in New Orleans are more likely than white homeowners in New Orleans to own homes with lower values, nor the 2008 PolicyLink study, which groups all African-American homeowners in Orleans Parish together regardless of income level, allow for disparate impact analysis as to non-LMI African-American homeowners in Orleans Parish. Plaintiffs’ anecdotal evidence, including congressional testimony, does not fill the gap. Without disaggregated data, the showing regarding African-American applicants who are ineligible for ACGs is “too weak to give [plaintiffs] the likelihood of success required for a preliminary injunction.” Maj. Op. at 1080.
The court, as a result, need not address the other three preliminary injunction factors. See Apotex, Inc. v. FDA 449 F.3d 1249, 1253-54 (D.C.Cir.2006); Maj. Op. at 1088. It bears noting, however, that the majority takes a strange turn in disposing of these appeals. In reaching Keegan’s evidentiary objection, the majority meanders into disparate impact theory — without citation to authority, e.g., Maj. Op. at 1085-86,1087 — and into benchmark suppositions not briefed by the parties much less argued in the district court, id. at 1087-88, and set up only to be rejected without record evidence on either side of the new constructs while ignoring support for plaintiffs’ evidentiary proffer, id. at 1088. The majority’s statewide analysis requirement, id. at 1085-86, suffers from similar flaws and, as noted, that argument by Keegan is not properly before the court. Along the way, the majority even speculates that white recipients might have disparate impact claims under a different, size-of-grant benchmark. Id. at 1088. One might well wonder what purpose these meanderings have other than to posit hurdles for future disparate impact claims. Whatever their purpose, the comments by the majority are unnecessary to the resolution of these appeals. Because these issues were not argued by the parties in their briefs (Keegan’s passing assertions bare of authority fail to conform to Fed. R. Apr P. 28(a)(9)(A)), and the appeals are based on a pre-discovery record inasmuch as Keegan refused to present statistical data on the Road Home Program to challenge plaintiffs’ evidentiary proffer in the district court, ruminations regarding disparate impact analysis and alternative statistical benchmarks are properly left for another day.

. Maj. Op. at 1080, referring to the funding of the Road Home Program by congressional appropriations of Community Development Block Grants in 2005, 2006, and 2007. See generally Title I of the Housing and Community Development Act of 1974, Pub.L. No. 93-383, 88 Stat. 663 (codified as amended at 42 U.S.C. §§ 5301 etseq.).

. Keegan also maintained as to the second motion for a preliminary injunction that plaintiffs lacked standing and that the district court lacked jurisdiction. See Maj. Op. at 1083. Keegan acknowledges that three of the five named plaintiffs are homeowners in New Orleans whose grant amounts under the Road Home Program were calculated based on the pre-storm value of their homes and that they are ineligible to receive Additional Compensation Grants. See Compl. ¶¶ 13-17, 21; Def.Appellee Cross-Appellant Robin Keegan Br. at 29. Class certification, by agreement of the parties, has been postponed by the district court. The court does not reach the grounds on which Keegan argues that the district court lacked jurisdiction. See Maj. Op. at 1088-89.

. See also 2007 Act § 159(b), 121 Stat. at 1343 ("No funds shall be drawn from the [United States] Treasury under this section beyond those necessary to fulfill the exclusive purpose of this section,” namely "to enable the Secretary ... to make a grant or grants to the State of Louisiana solely for the purpose of covering costs associated with otherwise uncompensated but eligible claims that were filed on or before July 31, 2007, under the Road Home program”).

. On September 22, 2010, this court granted plaintiffs’ motion for a temporary injunction. Upon being advised by letter of March 28, 2011 from counsel for plaintiffs and Keegan that serious settlement negotiations were underway, see D.C.Cir. Handbook Section II. C.2, the court vacated the injunction on March 29, 2011.

. PolicyLink, A Long Way Home: The State of Housing Recovery in Louisiana 2008 ("PolicyLink”), http://policylink.info/ threeyearslater/; see also affidavit of June 18, 2010, by the authors explaining the methodology-

. To qualify as LMI in Orleans Parish an applicant can have a maximum income of only $29,637.